

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AIGUL KAZYBAYEVA,<br><br>                             Petitioner,<br><br>v.<br><br>WARDEN OF OTAY MESA DETENTION CENTER,<br><br>                             Respondent. | Case No.: 26-cv-0421-GPC-MMP<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[ECF No. 1]** |

Before the Court is Petitioner's petition for a writ of habeas corpus. ECF No. 1. Respondents have responded in opposition to the petition, ECF No. 3, and Petitioner has filed a traverse, ECF No. 5. For the reasons outlined below, the petition is GRANTED and the Court ORDERS Petitioner's IMMEDIATE release.

## BACKGROUND

Petitioner, a citizen of Kazakhstan, has been residing and working within the United States since arriving with her children on July 9, 2022. ECF No. 1, at 6; ECF No. 3, at 2; ECF No. 5, ¶ 1. Petitioner was detained upon her initial entry into the United States but was released on parole that same day. ECF No. 3, at 1. Petitioner was issued a Notice to Appear on September 19, 2022. ECF No. 3-1, at 3. On December 21, 2022, Petitioner and

her children applied for asylum and for withholding of removal. ECF No. 5, ¶ 2; ECF No. 3-1, at 3. On March 29, 2023, an immigration judge dismissed Petitioner's immigration case. ECF No. 5, ¶ 3; ECF No. 3-1, at 3.

Since entering the United States, Petitioner has complied with all conditions of her parole, appeared for ICE check-ins, received work authorization, received a California driver's license and a U.S. Social Security Card, and applied for asylum. *Id.* ¶ 5.

On November 24, 2025, Petitioner and her daughter were detained when they crossed into a military base while driving for Uber. ECF No. 1, at 6. At that time, Petitioner alleges that ICE terminated Petitioner's parole without notice. *Id.* Petitioner has been detained since and has not been provided with a bond hearing. *Id.*

Petitioner now seeks a writ of habeas corpus from this Court ordering her immediate release or, in the alternative, an immediate bond hearing before an immigration judge. ECF No. 1, at 7.

## LEGAL STANDARD

Under 28 U.S.C. § 2241, a writ of habeas corpus may be granted to any petitioner who demonstrates that she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see Rasul v. Bush*, 542 U.S. 466, 473 (2004). The writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).

As explained by the Supreme Court, "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *Pinson v. Carvajal*, 69 F.4th 1059, 1067 (9th Cir. 2023) (habeas actions limited to challenges of the legality or duration of confinement). A petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *See Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009).

## DISCUSSION

### I.  Petitioner's Detention and Release Proceedings are Governed by § 1226

Respondents spend the bulk of their opposition arguing that Petitioner—a noncitizen detained in the interior of the country who has been present in the United States for three and a half years—is subject to mandatory detention under 8 U.S.C. § 1225(b) rather than permissive detention under 8 U.S.C. § 1226(a). ECF No. 3, at 2. Specifically, Respondents allege that the "plain language" of the statute—which provides for mandatory detention of "an alien who is an applicant for admission" who is "seeking admission," 8 U.S.C. § 1225(b)(2)(A)—applies to all individuals present in the United States who have not been admitted. ECF No. 3, at 2.

This argument has been rejected by district courts nationwide. *See*, *e.g.*, *Rodriguez v. Bostock*, No. 3:25-CV-05240-TMC, 2025 WL 2782499, at *1 (W.D. Wash. Sept. 30, 2025) (collecting cases); *Mosqueda v. Noem*, No. 25-CV-2304 CAS (BFM), 2025 WL 2591530, at *5 (C.D. Cal. Sept. 8, 2025); *Esquivel-Ipina v. LaRose*, No. 25-CV-2672 JLS (BLM), 2025 WL 2998361, at *5 (S.D. Cal. Oct. 24, 2025); *Quijada Cordoba v. Knight*, ---F. Supp. 3d---, 2025 WL 3228945, at *6 (D. Id. Nov. 19, 2025); *Lopez v. Warden, Otay Mesa Det. Ctr.*, No. 25-CV-2527-RSH-SBC, 2025 WL 3005346, at *3 (S.D. Cal. Oct. 27, 2025). This Court has previously held that, given the "seeking admission" language in § 1225(b)(2) and the government's own longstanding practice and interpretation of §§ 1225(b) and 1226(a), noncitizens such as Petitioner are not "seeking admission" under § 1225(b)(2). *See*, *e.g.*, *Lagarda-Vega v. Noem*, No. 3:25-CV-02970-GPC-DDL, 2025 WL 3558931, at *4-*7 (S.D. Cal. Dec. 11, 2025).

Further, Respondents' interpretation of § 1225(b) and policy of subjecting all inadmissible individuals like Petitioner to the mandatory detention provisions of § 1225(b) have been declared unlawful. *Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025), *judgment entered sub nom. Maldonado Bautista v. Noem*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025).

Indeed, in responding to Petitioner's daughter's petition for a writ of habeas corpus—filed the same day as Petitioner's—Respondents acknowledged that, given the *Bautista* final judgment, Petitioner's daughter was detained under § 1226(a) rather than § 1225(b). *Karmamoldoyeva v. Warden of Otay Mesa Detention Center*, Case No. 3:26-cv-00423-GPC-MSB, ECF No. 4, at 2. It is not clear why Respondents have decided to consider Petitioner's status differently from her daughter's, given the identical immigration history the two share. Nevertheless, for the reasons outlined above, the Court rejects Respondents' arguments that 8 U.S.C. § 1225(b) applies to Petitioner's detention, as she was not an alien "seeking admission" at the time of her detention. Thus, Petitioner is not subject to mandatory detention under § 1225(b)(2), and her removal proceedings are governed by § 1226(a).

## II.   Petitioner's Detention Violates Her Due Process Rights

Petitioner argues that Respondents violated the Due Process Clause of the Fifth Amendment, the Immigration and Nationality Act ("INA"), and the Administrative Procedure Act ("APA") by revoking Petitioner's parole and re-detaining Petitioner without notice, reason, or an opportunity to be heard. ECF No. 1, at 6.

Respondents counter that, because Petitioner's immigration proceedings had previously been dismissed in 2023, Petitioner lacked any parole status at the time she was detained in 2025.[1] In so arguing, Respondents seem to equate Petitioner's protected liberty interest with her status as a parolee. The Court disagrees.

---

[1] Though it does not impact the Court's analysis, the Court notes that Respondents' allegations that Petitioner "did not have any parole status" at the time she was re-detained in 2025 contradicts Respondents' own documentation of the event. Per Respondents' own filings, on the day Petitioner was re-detained, a Deportation Officer wrote "[Petitioner's] parole will be terminated upon issuance of a Notice to Appear (NTA). [Petitioner] will be served with a Notice to Appear (NTA) and remain in DHS custody pending removal proceedings." ECF No. 3-1, at 4.

Under the Due Process Clause of the Fifth Amendment, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. Amend. V. Indeed, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Due process rights apply to noncitizens, including those whose presence in the United States is unlawful. *Id.* at 693.

As applied to cases like Petitioner's: "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody [he] has a protected liberty interest in remaining out of custody." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). *See also Doe v. Becerra*, No. 2:25-CV-00647-DJC-DMC, 2025 WL 691664, at *4 (E.D. Cal. Mar. 3, 2025); *Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023); *Ortiz Donis v. Chestnut*, No. 1:25-CV-01228-JLT-SAB, 2025 WL 2879514, at *11 (E.D. Cal. Oct. 9, 2025). In fact, the government's initial release of an individual from custody "creates an 'implicit promise' that the individual's liberty will be revoked only if they fail to abide by the conditions of their release." *Calderon v. Kaiser*, No. 25-cv-06695-AMO, 2025 WL 2430609, at *2 (N.D. Cal. Aug. 22, 2025) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). An initial release from ICE custody further reflects "a determination by the government that [an individual is] neither a flight risk nor a danger to the community." *Pinchi*, 792 F. Supp. 3d at 1034; *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, *7 (N.D. Cal. Sept. 12, 2025). Thus, DHS may generally not re-arrest a previously released noncitizen "absent a change in circumstances." *Salcedo Aceros* 2025 WL 2637503, at *1 (citing *Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017)).

When Petitioner was released from her initial detention on parole, she "took with [her] a liberty interest which is entitled to the full protections of due process." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025); *see also Doe v.*

*Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty"). Counter to Respondents' argument, "this private interest did not expire along with Petitioner's parole agreement." *Ramirez Tesara*, 800 F. Supp. 3d at 1136. Rather, "[o]nce established, Petitioner's interest in liberty is a constitutional right which may only be revoked through methods that comport with due process, such as a hearing in front of a neutral party to determine whether Petitioner's re-detainment is warranted." *Id.*

Having determined that Petitioner had a maintained a protected liberty interest in remaining out of custody, the Court must next determine "what process is due." *Morrissey*, 408 U.S. at 481.

"The constitution typically 'requires some kind of a hearing *before* the State deprives a person or liberty or property.'" *G.S. v. Bostock*, No. 2:25-CV-01255-JNW-TLF, 2025 WL 3014274 (W.D. Wash. Oct. 8, 2025), *report and recommendation adopted sub nom. G.S. v. Bostock*, No. 2:25-CV-01255-JNW-TLF, 2025 WL 3014035 (W.D. Wash. Oct. 28, 2025) (quoting *Zinermon v. Burch*, 494 U.S. 113, 127 (1990)). To determine what procedures are required by due process, the Court evaluates the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 334-335 (1976). *See Ortiz Donnis*, 2025 WL 2879514, at *12. Under *Mathews*, a court must consider (1) "the private interest" at stake, (2) "the risk of an erroneous deprivation" without additional procedures and "the probable value . . . of additional or substitute procedural safeguards," and (3) the "Government's interest, including the function involved and the fiscal and administrative burdens imposed by the additional procedures." 424 U.S. at 335.

As to the first *Mathews* factor, Petitioner has a significant private interest in her continued liberty. Indeed, "the more than [three] years that she has spent out of custody since ICE initially released her have only heightened her liberty interest in remaining out of detention." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025). Thus, this

factor favors Petitioner. *See Salcedo* 2025 WL 2637503, *12; *Ortiz Donis*, 2025 WL 2879514, at *12; *Pinchi*, 792 F. Supp. 3d at 1034-35.

    Turning to the second *Mathews* factor, "it is clear that there is a significant risk that the government will erroneously deprive [Petitioner] of that liberty interest if it does not provide her with a pre-detention hearing." *Pinchi*, 792 F. Supp. 3d at 1035. Where, as here, Petitioner did not receive any bond or custody hearing upon her re-detention, "'the risk for erroneous deprivation [of liberty] is high' because neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for her detention." *Id.* (quoting *Singh v. Andrews*, No. 1:25-CV-00801, 2025 WL 1918679 (E.D. Cal. July 11, 2025)). Further, courts have noted that "civil immigration detention must be 'nonpunitive in purpose' and bear a 'reasonable relation' to the authorized statutory purposes of preventing flight and danger to the community." *G.S. v. Bostock*, 2025 WL 3014274, at *8. By releasing Petitioner on bond in 2022, immigration officers determined that she was neither a flight risk nor a danger to her community. *See id.*; *Ortiz Donis*, 2025 WL 2879514, at *1; *Pinchi*, 792 F. Supp. 3d at 1034. Respondents have not alleged that there has been a change in circumstance since Petitioner's 2022 release, other than the dismissal of Petitioner's immigration proceedings in 2023. Thus, the risk of erroneous deprivation is particularly high in Petitioner's case, as there is no evidence of changed circumstances or that Petitioner is a danger or flight risk. Accordingly, this factor also favors Petitioner.

    Finally, the Government "has failed to show any countervailing interest against providing a pre-detention hearing." *G.S. v. Bostock*, 2025 WL 3014274, at *9; *Salcedo Aceros*, 2025 WL 2637503, at *12. Indeed, "in immigration court, custody hearings are routine and impose a minimal cost." *Singh*, 2025 WL 1918679, at *8 (internal quotation marks and citation omitted). There is also no concern that a hearing will delay or obstruct Respondents efforts to remove Petitioner, as Petitioner has already been placed in full removal proceedings. *See* ECF No. 3, at 2, *G.S. v. Bostock*, 2025 WL 3014274, at *9;

*Salcedo Aceros*, 2025 WL 2637503, at *12. In sum, the Government's interest in detaining Petitioner without a hearing is low. *Singh*, 2025 WL 1918679, at *8.

Each of the *Mathews* factors favors Petitioner. Thus, Petitioner was entitled to a pre-deprivation bond hearing. The Government detained Petitioner, without explanation and without notice, despite its own prior determination that Petitioner was not a flight risk and posed no danger to the community. "Under these circumstances, given the government's conduct, the substantial liberty interests held by [Petitioner], and the fact that the government has no evidence and does not contend that [Petitioner] presents [a] risk or flight or to public safety, a pre-deprivation bond hearing is warranted." *Salcedo* 2025 WL 2637503, *12. At such a hearing, the government must demonstrate to a neutral decisionmaker by clear and convincing evidence that re-detention is necessary to prevent danger to the community or flight. *Pinchi*, 792 F. Supp. 3d at 1038; *see also Ortiz Donis*, 2025 WL 2879514, at *15. Put simply: "since it is the government that initiated re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention." *Ortiz Donis*, 2025 WL 2879514, at *15.[2]

Respondents argue that, if this Court concludes that Petitioner is detained under 8 U.S.C. § 1226(a) rather than § 1225(b), a bond hearing is the appropriate remedy. ECF No. 3, at 4. However, for the reasons discussed above, a bond hearing is insufficient to cure the due process violations faced by Petitioner. Respondents have failed to meaningfully address Petitioner's due process claims beyond indicating that she no longer held parole status when she was re-detained in 2025. Accordingly, the Court is not persuaded by Respondents' argument and instead orders Petitioner's release.

---

[2] Having reached this conclusion on Petitioner's due process and INA claims, the Court declines to decide the merits of Petitioner's APA claims.

## CONCLUSION

Based on the reasoning above, the Court **ORDERS**:

1. Petitioner's Petition for Writ of Habeas Corpus is **GRANTED**.

2. Because the government has no evidence that Petitioner poses a flight risk or danger to the community, Petitioner **SHALL** be released **IMMEDIATELY** from DHS custody. DHS **SHALL NOT** impose any additional restrictions on him, such as electronic monitoring, unless that is determined to be necessary at a later custody hearing.

3. Respondents **SHALL NOT** re-arrest or re-detain Petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice of at least seven days before a pre-deprivation hearing at which the government will bear the burden of demonstrating by clear and convincing evidence that Petitioner is likely to flee or pose a danger to the community if not detained.[3]

---

[3] In her prayer for relief, Petitioner requests an award of costs and reasonable attorney's fees pursuant to the Equal Access to Justice Act. ECF No. 1, at 13. That request is DENIED without prejudice. Petitioner's counsel may submit an appropriate EAJA fee application within 30 days of the issuance of this Order.